AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The Facebook account with user ID larry.holton.1612,<br>more particularly described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No. MJ19-5036

FILED     LODGED
RECEIVED
MAR 12 2019
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                              DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated by reference herein.

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) and 846 | Distribution of and Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit of DEA Special Agent Steve Meyer.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __365__ days (give exact ending date if more than 30 days: __03/11/2020__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steve Meyer, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 12, 2019

_____
*Judge's signature*

City and state: Tacoma, Washington

Theresa L. Fricke, United States Magistrate Judge
*Printed name and title*

1 **AFFIDAVIT**

2 STATE OF WASHINGTON      )

3                                            )  ss

4 COUNTY OF PIERCE          )

5     I, Steven Meyer, Special Agent, Drug Enforcement Administration (DEA), United

6 States Department of Justice, being first duly sworn on oath, depose and state:

7 <u>**MY BACKGROUND AND QUALIFICATIONS**</u>

8     1.     I am an "investigative or law enforcement officer of the United States"

9 within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of

10 the United States who is empowered by law to conduct investigations of, and to make

11 arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

12     2.     I am a Special Agent with the Drug Enforcement Administration (DEA),

13 and have been since March 2017.  I am currently assigned to the Seattle Field Division,

14 Tacoma Resident Office.  Prior to my employment with the DEA, I worked as a

15 Uniformed Officer with the Secret Service in Washington D.C., from June 2006 to April

16 2009.  I received formal training at the DEA Basic Agent Training in Quantico, Virginia.

17 The four-month Basic Academy included comprehensive, formalized instruction in,

18 among other things: basic narcotic investigations, drug identification and detection,

19 familiarization with United States narcotics laws, financial investigations and money

20 laundering, identification and seizure of drug-related assets, organized crime

21 investigations, physical and electronic surveillance, and undercover operations.

22     3.     During the course of my law enforcement career, I have been involved in

23 investigations of numerous criminal offenses, including the offenses involved in this

24 current investigation.  I have participated in criminal investigations of illicit drug

25 trafficking organizations, ranging from street-level dealers to major dealers, to include

26 Mexico-based drug trafficking organizations.  These investigations have also included the

27 unlawful importation, possession with intent to distribute, and distribution of controlled

28 substances; the related laundering of monetary instruments; the conducting of monetary

AFFIDAVIT OF Steve Meyer - 1
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    transactions involving the proceeds of specified unlawful activities; and conspiracies
2    associated with criminal narcotics offenses.  These investigations have included use of
3    the following investigative techniques: confidential informants; undercover agents;
4    analysis of pen register, trap and trace, and toll records; physical and electronic
5    surveillance; wiretaps; and the execution of search warrants.  I have had the opportunity
6    to monitor, listen to, review transcripts and line sheets (prepared by linguists)
7    documenting the content of intercepted conversations involving the trafficking of
8    cocaine, heroin, methamphetamine, and other narcotics, by persons who used some form
9    of code to thwart law enforcement.  I have also interviewed defendants at the time of
10   their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or
11   confidential sources (informants) at proffer interviews who were experienced in speaking
12   in coded conversations over the telephone.  I have gained knowledge regarding the
13   various methods, techniques, codes, and/or jargon used by drug traffickers in the course
14   of their criminal activities, including their use of cellular telephones and other electronic
15   devices to facilitate communications while avoiding law enforcement scrutiny.

### PURPOSE OF AFFIDAVIT

16
17       4.       This Affidavit is submitted in support of an application for a search warrant
18   under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A)
19   to require Facebook to disclose to the government records and other information in its
20   possession, pertaining to the subscriber or customer associated with the following
21   Facebook account (referred to herein as SUBJECT ACCOUNT 13):

22       a.       Facebook user ID larry.holton.1612, registered under the name
23   LARRY HOLTON.

24       5.       All of the requested information is stored at premises owned, maintained,
25   controlled, or operated by Facebook, a social networking company headquartered in
26   Menlo Park, California.  The information to be searched is described in the following
27   paragraphs and in Attachment B.  This is the first application for a search warrant for
28   SUBJECT ACCOUNT 13 in this investigation.

AFFIDAVIT OF Steve Meyer - 2
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    6.    In 2017, agents identified Juan Andres CASTRO Valenzuela as a drug

2  distribution coordinator operating out of Sinaloa, Mexico, through Facebook (and other

3  means).  Investigators believe he is directing drug operations in Western Washington, and

4  possibly elsewhere in the United States, from Mexico.  In order to communicate with

5  distributors and drug customers in the United States, CASTRO utilizes a variety of

6  applications, to include Facebook.  To date, agents have identified twelve Facebook

7  'Subject Accounts' connected to CASTRO, and received court authorization to search

8  their contents.  In December 2018, as a part of larger investigation involving these

9  Facebook records and other evidence, agents arrested dozens of members of the

10  CASTRO DTO.

11    7.    Recently, agents identified a thirteenth 'Subject Account' they believe

12  CASTRO is using for these same purposes, under the username LARRY HOLTON

13  (SUBJECT ACCOUNT 13).  This account contained multiple Facebook friends

14  confirmed to be drug customers of CASTRO.  As set forth in more detail below,

15  investigators are requesting authorization to search the contents of SUBJECT

16  ACCOUNT 13 for evidence of the CASTRO DTO's ongoing drug trafficking and related

17  criminal activities.

18    **FACEBOOK INFORMATION STORAGE**

19    8.    I am aware from my experience and training, and consultation with other

20  investigators, of the following information about Facebook:

21    9.    Facebook owns and operates a free-access social networking website of the

22  same name, accessed at http://www.facebook.com.  Facebook allows its users to establish

23  accounts with Facebook, and users can then use their accounts to share written news,

24  photographs, videos, and other information with other Facebook users, and sometimes

25  with the general public.

26    10.    Facebook asks users to provide basic contact and personal identifying

27  information to Facebook, either during the registration process or thereafter.  This

28  information may include the user's full name, birth date, gender, contact e-mail

AFFIDAVIT OF Steve Meyer - 3
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  address(es), Facebook passwords, Facebook security questions and answers (for

2  password retrieval), physical address (including city, state, and zip code), telephone

3  numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a

4  user identification number to each account.

5       11.    I know from speaking with other law enforcement that "cookies" are small

6  files placed by a server (such as those used by Facebook) on a device to track the user

7  and potentially verify a user's authentication status across multiple sites or

8  webpages.  This cookie could be unique to a particular account (e.g., the Facebook

9  account) or to a given device (e.g., the particular phone used to access the Facebook

10  account).  The next time a user visits a particular site or server, the server will ask for

11  certain cookies to see if the server has interacted with that user before.  Cookies can also

12  be used to determine "machine cookie overlap," or multiple accounts that have been

13  accessed by the same individual machine (e.g., two Facebook accounts that have been

14  accessed on the same phone).  The machine cookie overlap thus allows Facebook to track

15  accounts that are "linked" to each other because the same user account (username on a

16  computer) on the same device accessed multiple Facebook accounts.  This can identify

17  either multiple Facebook accounts used by the same person or different people sharing

18  the same user account and device.  In either case, the machine cookie overlap means that

19  the users of the linked accounts are the same person or two people in close proximity to

20  each other (by virtue of them using the same device).

21       12.    Facebook users may join one or more groups or networks to connect and

22  interact with other users who are members of the same group or network.  Facebook

23  assigns a group identification number to each group.  A Facebook user can also connect

24  directly with individual Facebook users by sending each user a "Friend Request."  If the

25  recipient of a "Friend Request" accepts the request, then the two users will become

26  "Friends" for purposes of Facebook and can exchange communications or view

27  information about each other.  Each Facebook user's account includes a list of that user's

28

AFFIDAVIT OF Steve Meyer - 4
USAO 2017R01238

1   "Friends" and a "News Feed," which highlights information about the user's "Friends,"
2   such as profile changes, upcoming events, and birthdays.

3        13.    Facebook users can select different levels of privacy for the
4   communications and information associated with their Facebook accounts.  By adjusting
5   these privacy settings, a Facebook user can make information available only to himself or
6   herself, to particular Facebook users, or to anyone with access to the Internet, including
7   people who are not Facebook users.  A Facebook user can also create "lists" of Facebook
8   friends to facilitate the application of these privacy settings.  Facebook accounts also
9   include other account settings that users can adjust to control, for example, the types of
10   notifications they receive from Facebook.

11        14.    Facebook users can create profiles that include photographs, lists of
12   personal interests, and other information.  Facebook users can also post "status" updates
13   about their whereabouts and actions, as well as links to videos, photographs, articles, and
14   other items available elsewhere on the Internet.  Facebook users can also post information
15   about upcoming "events," such as social occasions, by listing the event's time, location,
16   host, and guest list.  In addition, Facebook users can "check in" to particular locations or
17   add their geographic locations to their Facebook posts, thereby revealing their geographic
18   locations at particular dates and times.  A particular user's profile page also includes a
19   "Wall," which is a space where the user and his or her "Friends" can post messages,
20   attachments, and links that will typically be visible to anyone who can view the user's
21   profile.

22        15.    Facebook allows users to upload photos and videos.  It also provides users
23   the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is
24   tagged in a photo or video, he or she receives a notification of the tag and a link to see the
25   photo or video.  For Facebook's purposes, the photos and videos associated with a user's
26   account will include all photos and videos uploaded by that user that have not been
27   deleted, as well as all photos and videos uploaded by any user that have that user tagged
28   in them.

AFFIDAVIT OF Steve Meyer - 5
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

16.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

17.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

18.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

19.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos in which the user has been tagged, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

20.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

21.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

AFFIDAVIT OF Steve Meyer - 6
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1         22.    Some Facebook pages are affiliated with groups of users, rather than one

2 individual user.  Membership in the group is monitored and regulated by the

3 administrator or head of the group, who can invite new members and reject or accept

4 requests by users to enter.  Facebook can identify all users who are currently registered to

5 a particular group and can identify the administrator and/or creator of the group.

6 Facebook uses the term "Group Contact Info" to describe the contact information for the

7 group's creator and/or administrator, as well as a PDF of the current status of the group

8 profile page.

9         23.    Facebook uses the term "Neoprint" to describe an expanded view of a given

10 user profile.  The "Neoprint" for a given user can include the following information from

11 the user's profile:  profile contact information; News Feed information; status updates;

12 links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists,

13 including the friends' Facebook user identification numbers; groups and networks of

14 which the user is a member, including the groups' Facebook group identification

15 numbers; future and past event postings; rejected "Friend" requests; comments; gifts;

16 pokes; tags; and information about the user's access and use of Facebook applications.

17         24.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP

18 address.  These logs may contain information about the actions taken by the user ID or IP

19 address on Facebook, including information about the type of action, the date and time of

20 the action, and the user ID and IP address associated with the action.  For example, if a

21 user views a Facebook profile, that user's IP log would reflect the fact that the user

22 viewed the profile, and would show when and from what IP address the user did so.

23         25.    Social networking providers like Facebook typically retain additional

24 information about their users' accounts, such as information about the length of service

25 (including start date), the types of service utilized, and the means and source of any

26 payments associated with the service (including any credit card or bank account number).

27 In some cases, Facebook users may communicate directly with Facebook about issues

28 relating to their accounts, such as technical problems, billing inquiries, or complaints

AFFIDAVIT OF Steve Meyer - 7
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   from other users.  Social networking providers like Facebook typically retain records

2   about such communications, including records of contacts between the user and the

3   provider's support services, as well as records of any actions taken by the provider or

4   user as a result of the communications.

5        26.    Therefore, the computers of Facebook are likely to contain all the material

6   described above, including stored electronic communications and information concerning

7   subscribers and their use of Facebook, such as account access information, transaction

8   information, and other account information.  I believe such information is likely to

9   constitute evidence of the drug trafficking crimes currently under investigation.

10                       **SUMMARY OF PROBABLE CAUSE**

11       27.    The information set forth in this Affidavit consists of information I have

12   gathered and observed firsthand through the course of this investigation to date, as well

13   as information relayed to me by other law enforcement personnel, my review of law

14   enforcement reports, interviews of witnesses, and my review and analysis of toll records.

15   Since I am submitting this Affidavit for the limited purpose of obtaining authorization to

16   search SUBJECT ACCOUNT 13 as described herein, I have not included every fact

17   known to me concerning this investigation.  I have set forth only the facts that I believe

18   are essential to establish the necessary foundation for the issuance of such warrants.

19   *Background Information Regarding Investigation*

20       28.    Agents are investigating a drug trafficking organization (DTO) in Western

21   Washington they believe is being operated by Juan (and Florencio) CASTRO Valenzuela

22   (the user(s) of SUBJECT ACCOUNT 13), and their associates.  This organization is

23   referred to as the CASTRO DTO and predominantly is involved in the trafficking of

24   high-purity heroin, crystal methamphetamine, and genuine or counterfeit oxycodone pills.

25       29.    This investigation started as a local drug investigation by the Bremerton

26   Police Department (BPD) in August 2017 when an individual (Confidential Source 1, or

27   CS1) agreed to cooperate with law enforcement in exchange for judicial considerations.

28   CS1 was arrested by members of the BPD Special Operations Group (SOG) for his/her

AFFIDAVIT OF Steve Meyer - 8
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   involvement in drug trafficking. CS1 cooperated with SOG and provided them with

2   information about a group of Mexican drug traffickers who were distributing large

3   amounts of heroin in the Puget Sound region. CS1 advised SOG that he/she had been

4   selling various controlled substances for several years and had been in contact with

5   several of the people within this group of Mexican drug traffickers, which agents named

6   the CASTRO DTO.

7        30.    Within that organization, CS1 connected with a prominent drug trafficker

8   whom the CS knew as "Juan" or "Jose." CS1 believed the individual he/she knew as

9   "Juan" was the local leader of the drug distribution at that time, and was later promoted

10  to a larger role in the DTO. BPD Detective Jordan Ejde located a Facebook account

11  under the name of "Juan Andres CASTRO Valenzuela" (Subject Account 2, the target of

12  a prior search warrant issued by this Court)) that CS1 and other local suspected drug

13  dealers were associated with. Det. Ejde questioned CS1 about the account and CS1

14  confirmed CASTRO was the male whom he/she referred to as "Juan" or "Jose." CS1

15  also showed Det. Ejde messages confirming that CASTRO had been in (then) recent

16  contact with CS1, using Subject Account 2. According to CS1 and the Facebook data

17  he/she provided, CS1 had been talking to CASTRO via Facebook Messenger for

18  purposes of making drug transactions since approximately June of 2016.

19        31.    A review of CS1's Facebook account showed CASTRO also contacted CS1

20  from additional Facebook accounts under the names of "REBECA SPENCER" (Subject

21  Account 5), "ANNEL BAKER" (Subject Account 4), and "KATHERINE THOMAS"

22  (Subject Account 1). All three of those accounts have also been the target of search

23  warrants issued by this Court. A review of CS1's phone showed CASTRO also used

24  Mexican phone numbers 52-668-199-4039, 52-668-248-4230, 52-668-225-5890, and 52-

25  668-199-5533 to communicate with CS1 via text message and voice calls. Subject

26  Account 1 and phone number 52-668-199-4039 were (at that time) CASTRO's most

27  current methods of drug related communications with CS1.

28

AFFIDAVIT OF Steve Meyer - 9
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1      32.    Det. Ejde and DEA Special Agent (SA) Anthony DelVecchio confirmed

2    CASTRO's identity via the Washington State Department of Licensing (WADOL).

3    Specifically, CASTRO's WADOL photograph matches that of the individual depicted on

4    Subject Account 2.  Furthermore, according to a law enforcement database, CASTRO

5    was involved as a suspected "cell head" for heroin distribution in the Everett area during

6    a DEA investigation that took place in 2012.  SA DelVecchio researched this prior DEA

7    case and found that CASTRO was, in fact, the primary target of investigation within that

8    case.

9      33.    Based on how CASTRO first interacted with CS1, I believe CASTRO used

10    Subject Account 2 for initially contacting his suspected drug redistributors/customers.

11    When CASTRO first contacted the CS via Facebook Messenger, he used Subject

12    Account 2.  After a brief introduction utilizing Subject Account 2, CASTRO switched

13    over to a more discrete account(s), e.g., Subject Account 4 and/or Subject Account 5, for

14    the actual organizing of the suspected drug transactions.  I believe that by having a

15    picture of himself (CASTRO) as the account user for Subject Account 2, it helped his

16    redistributors/customers recognize him in addition to him building a rapport with them.

17      34.    CASTRO used Subject Account 1, Subject Account 2, Subject Account 4,

18    Subject Account 5, and an account under the name "ALISSA KEYSER" (Subject

19    Account 6, also the target of a search warrant issued by this Court), as well as various

20    telephone numbers, to set up drug deals with CS1.

21      35.    CS1 conducted seven controlled buys of suspected heroin from the

22    CASTRO DTO and was able to introduce an undercover DEA agent (UC) to the

23    CASTRO DTO towards the end of 2017.  Unfortunately, CS1 was battling heroin

24    addiction for most of the time he/she was working with agents and admitted to obtaining

25    personal use quantities of heroin from the CASTRO DTO during and after some of the

26    controlled purchases.  Following a brief period in rehabilitation/treatment, CS1 relapsed

27    into heroin use in the spring of 2018.  In May 2018, local police arrested CS1 and

28    charged him/her with residential burglary (felony) and driving with a suspended or

AFFIDAVIT OF Steve Meyer - 10
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 revoked license (misdemeanor).  SOG deactivated CS1 in May 2018 due to CS1's

2 substance abuse issues.  However, agents found CS1's information to be reliable during

3 the time agents utilized him/her to gather information.

4       36.    CS1's criminal history includes a felony conviction for

5 Manufacture/Deliver a Schedule I/II Narcotic in 2013, gross misdemeanor convictions

6 for Third Degree Malicious Mischief and First Degree Criminal Trespass in 2018, Fourth

7 Degree Assault in 2015, and Third Degree Malicious Mischief in 2011; and misdemeanor

8 convictions for Second Degree Criminal Trespass and Possession of Drug Paraphernalia

9 in 2018, Third Degree Driving With a Suspended or Revoked License in 2018 and 2008,

10 Indecent Exposure in 2013, and Third Degree Malicious Mischief in 2006.

11 ***Undercover Controlled Purchases Utilizing Subject Account 1***

12       37.    In early November 2017, SOG provided DEA agents, including an

13 undercover agent (the UC) with the various phone numbers and Facebook accounts they

14 believed CASTRO and SARMIENTO used for drug trafficking purposes.

15       38.    On November 14, 2017, CS1 sent the UC an invitation to join a group

16 Facebook Messenger chat session, which linked the UC in communication with Subject

17 Account 1.  CASTRO and the UC then engaged in conversation regarding CASTRO's

18 pricing for heroin.  On November 16, 2017, agents conducted an undercover purchase of

19 heroin from CASTRO (through one of the DTO's couriers) in Tacoma, Washington.  The

20 UC contacted CASTRO on 52-668-199-4039 (Target Telephone 1 or TT1) and through

21 Subject Account 1 prior to this transaction in order to facilitate the meeting.  After the

22 UC met with the courier and the transaction was completed, agents transported the

23 suspected heroin to the DEA Tacoma Resident Office where it was weighed at

24 approximately 87.4 gross grams.

25       39.    On November 27, 2017, the UC received a text message from CASTRO

26 (TT1).  During this conversation, the UC and CASTRO discussed a future drug

27 transaction for four ounces of heroin that would later occur on November 30, 2017.  On

28 November 30, the UC again met with the DTO's courier, this time in Federal Way,

AFFIDAVIT OF Steve Meyer - 11
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Washington. Prior to the controlled buy, the UC initiated a Facebook Messenger

2  conversation with CASTRO through Subject Account 1. Using Subject Account 1,

3  CASTRO told the UC that he changed the meet location from the Tacoma Mall to

4  Federal Way, Washington. After the UC arrived at the new meeting location, he/she

5  received two calls from CASTRO. Of note, Facebook Messenger has telephone call

6  capabilities as well as video chat. The first phone call came through Facebook

7  Messenger under Subject Account 1, and the second call came from TT1.

8       40.     The courier eventually arrived in at the new meeting location, and the UC

9  and the courier completed the transaction. Agents transported the suspected heroin to the

10  TRO where it was weighed at approximately 136.1 gross grams. Shortly after the UC

11  and the courier parted ways, CASTRO sent a large "thumbs up" graphic to the UC via

12  Subject Account 1, indicating a successful drug transaction.

13       41.     On December 15, 2017, at 11:16 a.m., the UC attempted to call CASTRO

14  via Subject Account 1 on Facebook Messenger. CASTRO did not answer the call, but

15  typed a response at 11:17 a.m. In those communications and others exchanged that day,

16  CASTRO and the UC arranged a deal to take place in Kent, Washington.

17       42.     At approximately 1:45 p.m., the UC observed a vehicle pull up and park

18  next to him. The UC exited his vehicle, got into the vehicle's front passenger seat, and

19  greeted the same DTO courier who delivered the heroin to the UC during the first two

20  controlled buys. The UC and the courier completed their transaction, and at 1:54 p.m.,

21  CASTRO sent a large "thumbs up" graphic to the UC via Subject Account 1 on Facebook

22  messenger.

23  ***Federal Search Warrant for Subject Account 1***

24       43.     On January 3, 2018, SA Samuel Landis obtained a search warrant from the

25  United States District Court for the Western District of Washington for Subject Account

26  1, believed to be used by CASTRO in order to network and facilitate suspected drug

27  transactions. On January 17, 2018, during a search of the Facebook Messenger portion of

28  the returned warrant materials, SA Landis found numerous suspected drug conversations

AFFIDAVIT OF Steve Meyer - 12
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  between CASTRO and individuals whom agents believe, based on the content of those

2  conversations and those individuals' respective criminal histories, are his drug

3  redistributors/customers.

4    44.    During a search of the "Cookies" portion of Subject Account 1, SA Landis

5  found Subject Account 3 and Subject Account 4 listed as accounts linked to Subject

6  Account 1.  On February 27, 2018, he contacted Facebook Support and asked how the

7  accounts linked to each other, based on the data Facebook had provided.  Facebook

8  Support staff informed him that Subject Account 1, Subject Account 3, and Subject

9  Account 4 were all accessed by the same electronic device (one that is capable of

10  accessing the World Wide Web) and under the same "cookie."  A "cookie" is a personal

11  identifier for a specific browser that links to particular web portal.  This means CASTRO

12  used the same electronic device to access Subject Account 1, Subject Account 3, and

13  Subject Account 4.  The electronic device CASTRO uses remembers his web signature or

14  "cookie" by storing his unique web browsing on Facebook.  Anytime CASTRO reuses

15  the same electronic device to browse the web, e.g., Facebook, the device remembers his

16  web identifiers for him.

17  ***Federal Search Warrant for Subject Accounts 1 Through 6***

18    45.    On March 8, 2018, SA Landis obtained a search warrant from the United

19  States District Court for the Western District of Washington for Subject Accounts 1

20  through 6, all of which he believed to be used by CASTRO in order to network and

21  facilitate suspected drug transactions.  On March 29, 2018, during a search of the

22  Facebook Messenger portion of Subject Accounts 1 through 3 and 5 through 6[1] of the

23  returned warrant materials, SA Landis again found numerous suspected drug

24  conversations between CASTRO and individuals whom agents believe are his drug

25  redistributors/customers.  Furthermore, during a search of the "Cookies" portion of

26

27  [1] According to the Facebook Law Enforcement Response Team, SA Landis's historical data request for Subject

28  Account 4 could not be processed because Subject Account 4 no longer existed.

AFFIDAVIT OF Steve Meyer - 13
USAO 2017R01238

1  Subject Accounts 3 and 6, he found Subject Account 7 (registered under the name
2  "GINA MORRIS") listed as an account that was accessed by the same electronic device
3  and under the same "cookie" as the aforementioned accounts.

4      46.     When SA Landis looked at Subject Account 7's friends list (publicly
5  available on Facebook) and compared it to the other Subject Accounts' friend lists (with
6  the exception of Subject Account 4), he found that the accounts all had multiple friends in
7  common.  Among the common friends were accounts that had been in contact with
8  Subject Account 1, Subject Account 5, and Subject Account 6 for the purposes of
9  organizing suspected drug transactions.

10 *CASTRO Uses Subject Accounts 7 and 8 to Contact CS1*

11     47.     On April 9, 2018, CASTRO contacted CS1 using Subject Account 7 to
12 have CS1 help him register a white 2008 Honda Accord in Washington in exchange for
13 "stuff," or what SA Landis believed to be heroin.  CASTRO and CS1 arranged the
14 vehicle registration to take place on April 10, 2018.  At 10:17 a.m., CS1 electronically
15 shared his/her location with CASTRO and continued his/her messaging conversation with
16 CASTRO using Subject Account 7.  In the conversation, CS1 confirmed his/her current
17 location with CASTRO and, about twenty minutes later, agents saw another identified
18 DTO courier and a male later identified as Juan Jose HIGUERA Gonzalez arrive at CS1's
19 location.

20     48.     After the registration process (and a subsequent lunch) was complete, the
21 courier, HIGUERA, and CS1 met briefly in the parking lot, where the courier provided
22 CS1 with approximately 20 grams of suspected heroin.  CS1 met with SA DelVecchio
23 and Det. Ejde at a secure location and provided them with the 20 grams of suspected
24 heroin.  SA DelVecchio and Det. Ejde searched CS1 for contraband items and did not
25 find any items during that search.  CS1 later told SA DelVecchio and Det. Ejde that the
26 suspected heroin was the CS's "payment" for taking care of the vehicle registration and
27 insurance, as CS1 and CASTRO had discussed on April 9, 2018.

28

AFFIDAVIT OF Steve Meyer - 14
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

49.     SA Landis obtained a warrant from the United States District Court for the Western District of Washington for Subject Account 7 on April 19, 2018.

50.     On April 27, 2018, CS1 contacted agents in regards to his/her recent contact with CASTRO.  According to CS1, he/she believed CASTRO created a new Facebook account in order to contact his suspected local drug contacts in the Western Washington area.  After agents acquired the account information from CS1, agents located Subject Account 8 (registered under the name "CHRIS HOLDFORD") on Facebook and, during a search of Subject Account 8's publicly available friends list, found that the majority of the people listed were also on the friends lists for Subject Accounts 1 through 7.  Given this similarity between all eight Subject Accounts and CASTRO's use of Facebook accounts to communicate with his drug clientele (including CS1) in order to set up drug deals, agents believe CASTRO created Subject Account 8 for the sole purpose of connecting with his suspected drug clientele in order to further his suspected drug transactions.

51.     On July 3, 2018, SA Landis obtained a search warrant from the United States District Court for the Western District of Washington for Subject Account 8, which he believed CASTRO used in order to network and facilitate suspected drug transactions.  On July 19, 2018, during a search of the Facebook Messenger portion of the returned warrant materials, SA Landis did not find any messages. This was highly unusual based on past UC interactions with CASTRO over Facebook Messenger and information previously gathered from the returned warrant materials for Subject Accounts 1 through 7.  SA Landis contacted Facebook support staff via email on July 20, 2018, to find out if there were any missing materials not included in the documents provided.  Days later, he received a phone call from Facebook's support staff.  During this call, SA Landis explained that in many of his previously authorized requests, he had not experienced the absence of information.  Facebook support staff told him the user of Subject Account 8 may have deleted all of his conversations over Facebook Messenger. According to Facebook's support staff, if a Subject Account user deletes his/her

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

conversations over Facebook Messenger, Facebook cannot provide the information, even if a search warrant is executed on a Subject Account. This is because Facebook simply does not store deleted Facebook Messenger messages/conversations. However, with a preservation request, Facebook can preserve materials deleted by a Subject Account user and later produce them upon receipt of a court order (warrant). With a preservation request, Facebook will store any deleted conversations for any Subject Account for up to 90 days for law enforcement personnel.

52.     Despite the absence of Facebook Messenger materials for Subject Account 8 from the search warrant return, SA Landis did receive other data associated with the Subject Account. Specifically, the phone number (TT20) associated with Subject Account 8 was one agents previously identified as being used by the CASTROs. On July 10, 2018, agents conducted an undercover purchase of suspected heroin from the CASTRO DTO, through HIGUERA. The UC contacted the CASTRO brothers (on TT20) shortly after 11:00 a.m. and asked for "2 pieces" (or 50 grams) of heroin. The CASTROs agreed to do the deal for $2,150. The subsequent transaction between the UC and HIGUERA lasted less than one minute. The UC provided HIGUERA with $2,150 of DEA buy money and HIGUERA provided the UC with a substance that field-tested positive for the presence of heroin and weighed 83.4 gross grams (with packaging).

***Discovery of Subject Accounts 9 and 10***

53.     During the search of the "Cookies" portion of the returned warrant materials for Subject Account 8, SA Landis found Subject Account 1, Subject Account 3, Subject Account 6, Subject Account 7, and an account under the name "RUDY JACKSON" (Subject Account 9) listed as accounts accessed by the same electronic device and under the same "cookie." Again, this indicated a very high probability that the same person(s) (i.e., the CASTROs) was using all of these Subject Accounts, including Subject Account 9, since the same electronic device (i.e., computer, cell phone, or the like) was accessing all of the accounts.

AFFIDAVIT OF Steve Meyer - 16
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

54.     When SA Landis examined Subject Account 9's publicly available friends list and compared it to the other Subject Accounts' friend lists (with the exception of Subject Account 4), he found that the accounts all had multiple friends in common. Additionally, agents had previously identified most of these "friends" as suspected drug customers, further indicating the CASTROs are utilizing Subject Account 9 as a means of connecting with their suspected drug customers.

55.     On July 23, 2018, SA Landis submitted a preservation request for Subject Account 9 through Facebook's law enforcement web portal in an effort to capture future suspected drug related conversations over Subject Account 9, should the CASTROs continue their pattern of deleting Facebook Messenger conversations as they had apparently done with Subject Account 8.

56.     On August 15, 2018, SA Landis obtained a search warrant from the United States District Court for the Western District of Washington for Subject Account 9. Subject Account 9's friends list included seven individuals who had a mutual friend named "steve.larson.750983" (Subject Account 10).  Comparison of Subject Account 10's publicly available friends list with the previous Subject Accounts' friends lists (with the exception of Subject Account 4) revealed they all had multiple friends in common. Agents have previously identified most of these "friends" as suspected drug customers of the CASTROs.

57.     Additionally, data from the Subject Account 9 search warrant included a Mexican telephone number, 52-668-171-2538, which agents had previously identified as being used by the CASTROs.  Based on phone toll analysis, 52-668-171-2538 was in contact with Devon Meyer, who has consistently been on the friends lists for the Subject Accounts discussed herein.  Meyer was also included on the friends list for Subject Account 10, further indicating the CASTROs are the users of Subject Account 10.

***Discovery of Subject Account 11***

58.     On October 12, 2018, I obtained a search warrant from the United States District Court for the Western District of Washington for Subject Account 10, which I

AFFIDAVIT OF Steve Meyer - 17
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  believe CASTRO used in order to network and facilitate suspected drug transactions.

2  During a search of the "Cookies" portion of the returned warrant materials, I found

3  Subject Account 6, Subject Account 3, Subject Account 9, and Subject Account 10 listed

4  as accounts accessed by the same electronic device and under the same "cookie." Again,

5  this indicates a very high probability that the same person(s) (i.e., the CASTROs) is using

6  all of these Subject Accounts, including Subject Account 10, since the same electronic

7  device (i.e., computer, cell phone, or the like) is accessing all of the accounts.

8       59.    When I examined Subject Account 10's friends list and compared it to the

9  other Subject Accounts' friend lists, I found that the accounts all had multiple friends in

10  common. Agents have previously identified most of these "friends" as suspected drug

11  customers, further indicating the CASTROs are utilizing Subject Account 10 as a means

12  of connecting with their suspected drug customers. Agents identified multiple messages

13  sent to or from Subject Account 10 indicating drug trafficking. For example, on August

14  28, 2018, the user of an account in the name Allex Hubly asked the user of Subject

15  Account 10 if he would "front him" an ounce; the user of the Subject Account 10 agreed.

16  Over the course of this investigation, surveillance units observed Allex Hubly meet with

17  CASTRO DTO runners. Of note, Allex Hubly and her husband, David Jozeph Hubly

18  were among the dozens of CASTRO DTO members law enforcement arrested on

19  December 6, 2018. A Grand Jury in the Western District of Washington charged them

20  with Conspiracy to Distribute Controlled Substances; their trial date is set for August 26,

21  2019.

22       60.    On August 23, 2018, the user of Facebook account in the name Larry

23  Sweitzer informed the user of Subject Account 10 he was ready to meet and just needed

24  to pick up cash and his driver. On August 28, 2018, Sweitzer told the user of Subject

25  Account 10 that he (Sweitzer) was not ready, the "stuff" was not quite as good, and it was

26  taking longer to get rid of. Agents researched the Larry Sweitzer account and confirmed

27  it had been present in the returned materials for Subject Accounts 1, 3, 6, 8, 9, and 10. A

28  search of Subject Account 9 ("Rudy Jackson") revealed Sweitzer had asked for "17" for

1    $800 on July 22, 2018, "18" for $846 on July 25, 2018, and "23" for $1,035 on July 28,

2    2018. Based on training and experience, I believe these communications indicate

3    Sweitzer bought a total of 58 grams of heroin for $2,681. Additionally, while

4    communicating with the user of Subject Account 9 on July 28, 2018, Sweitzer stated,

5    "I'm in a blue Ford Focus" while arranging to meet for the drug purchase. On November

6    7, 2018, surveillance units observed a blue Ford Focus, bearing Washington license

7    BER8834, parked at Sweitzer's address of 75 NE Brookdale Lane, Bremerton,

8    Washington.

9         61.    A search of Sweitzer's publicly available friends list showed he was also

10   friends with TOM RYAN (Subject Account 11). Agents looked at the publicly available

11   Facebook friends list for Subject Account 11, and saw that eight of the ten friends had

12   been identified in previous Subject Accounts. Among them were Larry Sweitzer and

13   Jake Wilson. A search of Subject Account 9 revealed that on August 13, 2018, the user

14   of Subject Account 9 arranged to sell 38 grams of heroin for $1,600 to Jake Wilson, and

15   communicated that his runner would be meeting other clients before delivery to Wilson.

16   Of note, Wilson was also among the dozens of CASTRO DTO members law enforcement

17   arrested on December 6, 2018. A Grand Jury in the Western District of Washington

18   charged him with Distribution of a Controlled Substance; his trial date is set for June 10,

19   2019.

20   ***Discovery of SUBJECT ACCOUNT 13***

21        62.    On November 9, 2018, the Honorable David W. Christel, United States

22   Magistrate Judge for the Western District of Washington, authorized a search warrant for

23   Subject Account 11. Agents received the requested information from Facebook for

24   Subject Account 11 on November 28, 2018.

25        63.    Between December 5, 2018, and December 7, 2018, agents executed

26   federal arrest and search warrants targeting the CASTRO DTO that resulted in forty three

27   federal arrests, including multiple "friends" from the Subject Accounts.

28

AFFIDAVIT OF Steve Meyer - 19
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

64.     In early January, 2019, suspecting that the CASTRO DTO was again using Facebook to distribute drugs in Western Washington, agents attempted to identify a new Subject Account by analyzing known "friends" from previous accounts and gave particular attention to Subject Account 11, whose materials they received just prior to the December 6, 2018, series of arrests.  As a result, agents identified three "friends" from Subject Account 11 who had a mutual friend named "larry.holton.1612" (SUBJECT ACCOUNT 13).  Comparison of SUBJECT ACCOUNT 13's publicly available friends list with the previous Subject Accounts' friends lists (with the exception of Subject Account 4) revealed they had multiple friends in common.  Among the identified friends for SUBJECT ACCOUNT 13 were CS1, "Larry Sweitzer," and "Mike Myguy."  Agents continued to conduct periodic searches of SUBJECT ACCOUNT 13, and determined additional "friends" were being added, suggesting continued use of the account.

65.     As described above, agents initially identified Sweitzer through their review of the various Facebook accounts used by the Castro brothers.  Although agents have an arrest warrant for Sweitzer (and a sworn criminal complaint charging him with Distribution of a Controlled Substance), they were unable to locate him on December 6, 2018, during the coordinated takedown of the CASTRO DTO.

66.     Agents had already identified "Mike Myguy" through examination of Facebook records from previous accounts.  They determined the CASTROs discussed multiple drug deals with Facebook user "Mike TMobile" and, later, "Mike Myguy." Investigators worked to identify "Mike TMobile."  They reviewed "Mike TMobile's" account and noticed it was actually the same account as "Mike Myguy," just with a different "displayed name."  Agents located a photograph on this multi-named Facebook account, which showed "Mike TMobile/Mike Myguy" and an adolescent male. On March 27, 2018, CASTRO, while using the "Gina Morris" account, told "Mike TMobile" to contact "Luis" at 206-981-1971, if he needed anything.  Agents had previously identified "Luis" as a CASTRO drug courier in Western Washington named Arturo Frias Ceballos.  Phone toll analysis of 206-981-1971 (Frias' phone number, as provided by

AFFIDAVIT OF Steve Meyer - 20
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  CASTRO) showed Frias contacted telephone number 253-576-7093 17 times between

2  March 27, 2018 and April 7, 2018.  Analysis of the number 253-576-7093 showed it was

3  subscribed to Michael Stangel.  A WADOL photograph of STANGEL matched the

4  Facebook photo of "Mike TMobile/Mike Myguy."

5      67.    As is the case with Larry Sweitzer, agents also have an arrest warrant for

6  Stangel (and a sworn criminal complaint charging him with Distribution of a Controlled

7  Substance), but were unable to locate him on December 6, 2018, during the coordinated

8  takedown of the CASTRO DTO.

9      68.    On February 12, 2019, I submitted a preservation request for SUBJECT

10  ACCOUNT 13 through Facebook's law enforcement web portal in an effort to capture

11  suspected drug related conversations over SUBJECT ACCOUNT 13, should the

12  CASTROs delete Facebook Messenger conversations (as they had apparently done with

13  Subject Account 8) prior to law enforcement's submission of a search warrant to

14  Facebook.

15      69.    Based on the above, I believe there is probable cause to believe the user of

16  SUBJECT ACCOUNT 13 is using the account for drug trafficking purposes, and that

17  evidence of the same, as enumerated in Attachment B, will be found within the materials

18  sought in Attachment A.

19          **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

20      70.    I anticipate executing this warrant under the Electronic Communications

21  Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A)

22  and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the

23  government copies of the records and other information (including the content of

24  communications) particularly described in Section I of Attachment B.  Upon receipt of

25  the information described in Section I of Attachment B, government-authorized persons

26  will review that information to locate the items described in Section II of Attachment B.

27      71.    As indicated in the Motion for Nondisclosure and Motion to Seal that

28  accompany this Affidavit, the government requests, pursuant to the preclusion of notice

AFFIDAVIT OF Steve Meyer - 21
USAO 2017R01238

1  provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not
2  to notify any person (including the subscriber or customer to which the materials relate)
3  of the existence of this warrant for such period as the Court deems appropriate.  The
4  government submits that such an order is justified because notification of the existence of
5  this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would
6  give the subscriber an opportunity to destroy evidence, change patterns of behavior,
7  notify confederates, or flee from prosecution.  Notifying our targets of the existence of
8  this investigation will likely cause them to destroy evidence, flee the jurisdiction, or alter
9  their methods, thus making it more difficult to dismantle the organization effectively.
10  Notice also could put the CS, UC, and agents working with them in danger

11       72.     It is further respectfully requested that this Court issue an order sealing all
12  papers submitted in support of this application, including the application and search
13  warrant, until such dates as provided in the proposed Order.  I believe that sealing this
14  document is necessary because the items and information to be seized are relevant to an
15  ongoing investigation.  Premature disclosure of the contents of this Affidavit and related
16  documents may have a significant and negative impact on the continuing investigation
17  and may severely jeopardize its effectiveness.

18  **COMMON CHARACTERISTICS OF DRUG TRAFFICKERS**

19       73.     Based on my training and experience, including experience obtained
20  through participation in this and other investigations involving the distribution of
21  controlled substances, including those targeting long-term conspiracies responsible for
22  the distribution of controlled substances, and based upon my consultation with other
23  experienced law enforcement agents and officers, I know that:

24       a.     Drug trafficking conspiracies, especially those involving large amounts of
25  narcotics and interstate shipments, usually take place over several months or years, and
26  continue to operate even when enforcement activity results in arrests and/or seizures of
27  drugs and/or money.

28

AFFIDAVIT OF Steve Meyer - 22
USAO 2017R01238

1    b.    Those involved in the distribution of illicit drugs often communicate by

2    telephone in connection with their illegal activities in order to set up meetings with

3    coconspirators, conduct drug transactions, or to arrange for the transportation drugs or

4    drug proceeds.

5                                   **CONCLUSION**

6    74.    Based upon the information which has been uncovered during the course of

7    this investigation, and on the advice, experience, knowledge of other agents and officers

8    involved in this investigation, I believe these facts establish probable cause to conclude

9    that SUBJECT ACCOUNT 13 has been used, and will continue to be used, to facilitate

10   violations of the Controlled Substances Act, specifically distribution of narcotics,

11   conspiracy, and related offenses in the Western District of Washington, and elsewhere, in

12   violation of the Controlled Substances Act, Title 21, United States Code, Sections 841

13   and 846.

14

15                                   Steven Meyer,
16                                   Special Agent
17                                   Drug Enforcement Administration

18

19   Subscribed and sworn to before me this 12th day of March, 2019.

20

21

22                                   THERESA L. FRICKE
23                                   UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

AFFIDAVIT OF Steve Meyer - 23
USAO 2017R01238

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the following account, identified by Facebook user ID: larry.holton.1612, registered under the name LARRY HOLTON, for all such information that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.  This warrant is limited to information created after June 16, 2016.

AFFIDAVIT OF Steve Meyer - 24
USAO 2017R01238

UNITED STATES ATTORNEY
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

1

**ATTACHMENT B**

2

**Particular Things to be Seized**

3   **I.    Information to be disclosed by Facebook**

4           To the extent that the information described in Attachment A is within the

5   possession, custody, or control of Facebook, including any messages, records, files, logs,

6   or information that have been deleted but are still available to Facebook, or have been

7   preserved pursuant to a request made under Title 18, United States Code, Section 2703(f),

8   Facebook is required to disclose the following information to the government for the user

9   ID listed in Attachment A (larry.holton.1612), referred to herein as SUBJECT

10  ACCOUNT 13:

11       A. The following information about the customer or subscriber of SUBJECT

12          ACCOUNT 13:

13          (a)   All contact and personal identifying information, including full name, user

14                identification number, birth date, gender, contact e-mail addresses,

15                Facebook passwords, Facebook security questions and answers, physical

16                address (including city, state, and zip code), telephone numbers, screen

17                names, websites, and other personal identifiers.

18          (b)   All activity logs for SUBJECT ACCOUNT 13, and all other documents

19                showing the user's posts and other Facebook activities;

20          (c)   All photos and videos in their original format, including EXIF information

21                (metadata), uploaded by that user ID and all photos and videos in their

22                original format, including EXIF information (metadata), uploaded by any

23                user that have that user tagged in them;

24          (d)   All other records of communications and messages made or received by the

25                user, including all private messages, chat history, calling history, and

26                pending "Friend" requests;

27          (e)   All "check ins" and other location information;

28

AFFIDAVIT OF Steve Meyer - 25
USAO 2017R01238

1    (f)    All IP logs, including all records of the IP addresses that logged into

2            SUBJECT ACCOUNT 13;

3    (g)    All past and present lists of friends created by SUBJECT ACCOUNT 13;

4    (h)    All records of Facebook searches performed by SUBJECT ACCOUNT 13;

5    (i)    The length of service (including start date);

6    (j)    The means and source of payment for such service (including any credit

7            card or bank account number) and billing records;

8    (k)    All records pertaining to communications between Facebook and any

9            person regarding the user or the user's Facebook account, including

10           contacts with support services and records of actions taken;

11    (l)    Names (including subscriber names, Facebook user IDs, and screen

12           names);

13    (m)    Addresses (including mailing addresses, residential addresses, business

14           addresses, and e-mail addresses);

15    (n)    Local and long distance telephone connection records;

16    (o)    Linked accounts; and

17    (p)    Telephone or instrument numbers or identities (including MAC addresses).

18    B.  All records and other information (not including the contents of communications)

19       relating to SUBJECT ACCOUNT 13, including:

20    (a)    Records of user activity for each connection activity for each connection

21           made to or from SUBJECT ACCOUNT 13, including log files; messaging

22           logs; the date, time, length, and method of connections; data transfer

23           volume; user names; and source and destination of Internet Protocol

24           addresses;

25    (b)    Information about each communication sent or received by SUBJECT

26           ACCOUNT 13, including the date and time of the communication, the

27           method of the communication (such as source and destination email

28           addresses, IP addresses, and telephone numbers); and

AFFIDAVIT OF Steve Meyer - 26
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1     (c)    Records of any Facebook accounts that are linked to SUBJECT

2           ACCOUNT 13 by machine cookies (meaning all Facebook user IDs that

3           logged into Facebook by the same machine or device as SUBJECT

4           ACCOUNT 13).

5 **II.**     **Information to be seized by the government**

6     All information described above in Section I that relates to the ongoing narcotics

7 investigation described in the Affidavit, including, for SUBJECT ACCOUNT 13,

8 information pertaining to the following matters:

9     (a)  Any content including e-mails, messages, texts, photographs (including

10         metadata), videos (including metadata), visual images, documents,

11         spreadsheets, address lists, contact lists or communications of any type

12         which could be used to identify the user and or their location.

13     (b)  Records relating to who created, used, or communicated with the user ID,

14         including records about their identities and whereabouts.

15     (c)  All subscriber records associated with SUBJECT ACCOUNT 13, including

16         names, addresses, local and long distance telephone connection records, or

17         records of session times and durations, length of service (including start

18         date) and types of service utilized, telephone or instrument number or other

19         subscriber number or identity, including any temporarily assigned network

20         address, and means and source of payment for such service including any

21         credit card or bank account number.

22     (d)  Any and all other log records, including IP address captures, associated

23         with SUBJECT ACCOUNT 13; and

24     (e)  Any records of communications between Facebook and any person about

25         issues relating to the account, such as technical problems, billing inquiries,

26         or complaints from other users about SUBJECT ACCOUNT 13.  This is to

27         include records of contacts between the subscriber and the provider's

28

support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

AFFIDAVIT OF Steve Meyer - 28
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800